UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH WILSON,

                Plaintiff,

        v.                                    20-CV-1416-LJV
                                              DECISION & ORDER
JULIE WOLCOTT, *et al.*,

                Defendants.

---

## INTRODUCTION

The *pro se* plaintiff, Keith Wilson, was a prisoner confined at the Orleans

Correctional Facility ("Orleans") when he filed this action.  Docket Item 1.  This Court

previously granted Wilson's request to proceed *in forma pauperis* (that is, as a person

who should have the prepayment of the ordinary filing fee waived because he cannot

afford it) and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

Docket Item 6.  In that screening order, this Court found that Wilson's procedural due

process claims against two of the defendants could proceed but that his remaining

claims would be dismissed unless he amended them.  *See id.* at 18-19.  This Court also

found that Wilson had adequately alleged that his "[t]ier [a]ssistant," whom Wilson did

not name as a defendant, violated Wilson's right to due process, and this Court

therefore allowed Wilson to amend the complaint to name that person as a defendant.

*See id.* at 8 n.2.

On May 6, 2021, Wilson filed an amended complaint.  Docket Item 7.  On August

2, 2021, this Court issued a second screening order allowing Wilson's procedural due

process and false imprisonment claims to proceed against all defendants but dismissing his remaining claims under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Docket Item 8 at 18.

On November 3, 2021, the defendants moved to dismiss.  Docket Item 11.  On January 28, 2022, Wilson responded, Docket Item 21, and on February 14, 2022, the defendants replied, Docket Item 22.  For the reasons that follow, this Court denies the defendants' motion.

## FACTUAL BACKGROUND[1]

Wilson has sued Superintendent Julie Wolcott, "S[ergeant] Andino," Lieutenant Anthony Olles, "S[e]rgeant Patti," and Sergeant John Ferraioli.  Docket Item 7.  A liberal reading of the amended complaint tells the following story.

"On April 20, 2020, at approximately 7:00 p.m.[,] [Wilson] was using the phone" when he was "wrongfully confronted by an [Orleans] correction officer who ordered [Wilson] to hang up the phone."  *Id.* at ¶¶ 17-18.  Wilson "promptly complied with the officer's demands."  *Id.* at ¶ 19.  Nevertheless, the officer, "in the presence [of] and at the behest of Ferraioli," took Wilson "to an undisclosed location and pat-frisked" him.  *Id.* at ¶ 20.  The correction officer and Ferraioli then "seized" Wilson, "placed [him] in mechanical restraints[,] . . . and unlawfully t[ook] [him] to the small Special Housing Unit

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y.  Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014)).

'SHU.'"  *Id.* at ¶ 21.  "Ferraioli did not interview [Wilson] or even explain why [Wilson]

was being immediately restrained . . . in the small SHU."  *Id.* at ¶ 22.

The next day, "Correction Officer Miller [] serve[d] [Wilson] with a 'Tier Three

Misbehavior Report.'"  *Id.* at ¶ 23.  "The misbehavior report was authored by Andino and

wrongly and falsely accused [Wilson] of" bribing and extorting prisoners and violating

the phone program.  *Id.* at ¶ 24.  Because Wilson was charged with "tier three"

violations, he was entitled to certain rights under the "New York Codes, Rules and

Regulations" ("NYCRR"), including a superintendent's hearing and an "[i]nmate

[a]ssistant to assist [him] in the preparation of his defense."  *Id.* at ¶¶ 25-26.

Wilson requested an inmate assistant and was assigned Patti.  *Id.* at ¶ 28.  As

Wilson's inmate assistant, Patti was obliged to "speak with [Wilson], explain the

charges, interview witnesses[,] . . . report [t]he results of his efforts to [Wilson,] . . .

assist[ Wilson] in obtaining documentary evidence or written statements[,] and possibly

[] be present at the hearing."  *Id.* at ¶ 27.  Accordingly, Wilson asked Patti to "retrieve all

material evidence (inculpatory and exculpatory)," such as "To/Froms, Unusual Incident

Reports [], and other pertinent documents."  *Id.* at ¶ 29.  Wilson also requested all

"audio recorded and written statements made to Ferraioli and Andino by any

confidential informants."  *Id.* at ¶ 30.  "Patti refused his duty to [Wilson] and summarily

denied" Wilson's requests.  *Id.* at ¶ 31.

Wilson also "vigorously sought a witness to refute" the charges against him and

"directed [Patti] to obtain this key witness."  Docket Item 1 at ¶ 16.[2]  But instead of

---

[2]  Wilson included attachments and made factual allegations in the original
complaint that were not in the amended complaint.  *Compare* Docket Item 1, *with*
Docket Item 7.  In its screening order, this Court "liberally construe[d] the amended

helping Wilson, Patti "colluded with [Wilson's] accusers to circumvent his witness." *Id.*
For example, Patti "told the witness that if he 'wanted to avoid trouble[,]' he should 'stay
out of this.'" *Id.* This "caused the witness not to testify and [to] return to his respective
housing unit." *Id.* "Not only did [Patti] maliciously scare [the] witness, he [] denied
[Wilson] reasonable access to documentary evidence." *Id.*

While Wilson was in the SHU awaiting the hearing, Andino "began calling people
from B-1 [] Dorm . . . randomly and attempted to scare them into signing papers stating
that [Wilson] extorted them, to which they refused." *Id.* at ¶ 37. "Andino with [] Olles did
this to create 'victims' after [Wilson already] was confined [in the SHU] absent a
hearing." *Id.*

Under the NYCRR, "Wolcott [was] only authorized to appoint an employee [that]
is a deputy superintendent, captain, or who holds a title that has been approved by [the]
Central Office to conduct the proceeding against [Wilson]." Docket Item 7 at ¶ 32.
Wolcott violated this rule by appointing Olles, a lieutenant, to proceed over Wilson's
hearing. *Id.* at ¶ at 33. Moreover, Olles "insisted on being the [f]act [f]inder just to find
[Wilson] guilty" and "cover for his co-workers." Docket Item 1 at ¶¶ 20, 39,

On April 22, 2020, Olles, "wrongfully and without authority of [the] Central
Office[,] commence[d] the [s]uperintendent's hearing against [Wilson]." Docket Item 7 at
¶ 34. "During the course of the hearing[,] Olles departed from [the NYCRR] and []
refuse[d] to rely on any 'substantial evidence' to support his findings." *Id.* at ¶ 36. Olles
also "violated [Wilson's] procedural due process rights by relying on the false written

---

complaint as including the original complaint and its attachments as exhibits." *See*
Docket Item 8 at 4-5 n.1. And this Court does the same here.

report of Andino, the false verbal testimony of Andino, the false verbal testimony of Ferraioli, and the 'ghost' confidential informants and documentary evidence that was [submitted into] the record."  *Id.* at ¶ 37.  "Olles knew or should have known that Andino and Ferraioli w[ere] supplying false documents and testimony."  *Id.* at ¶ 39.

Wilson also was "not allowed to see a single piece of paper or anything that even supported the existence of [] [c]onfidential [i]nformants."  Docket Item 1 at ¶ 18.  Wilson tried "to give [Olles] a list of questions to ask the[] '[c]onfidential [i]nformants,'" but he received only "cursory and vague responses" from Olles in reply.  *Id.* at ¶ 16.

On May 5, 2020, Olles found Wilson guilty, Docket Item 7 at ¶ 42, and sentenced Wilson to "90 days in SHU with 30 days suspended and loss of all privileges," *id.* at ¶ 44.  In doing so, Olles "relied upon the testimony and documentation of his fellow co-workers[,] Andino and Ferraioli[,]" as well as the testimony of "confidential witnesses" and "confidential documentary evidence."  *Id.* at ¶¶ 38, 43.

On May 17, 2020, Wilson "filed an administrative appeal [of the hearing result] to the [Department of Corrections and Community Supervision ('DOCCS')] Commissioner," arguing that there was not substantial evidence for a guilty finding and challenging "the reliability of the 'ghost' confidential informants."  *Id.* at ¶ 45.  On July 28, 2020, the Commissioner "reviewed and reversed" the hearing result.  Docket Item 1 at 23 (text changed to lowercase).

While in the SHU, Wilson was deprived of his "personal property, the right to shower daily and a clean environment, the loss and deprivation of programs and inmate pay wages, and daily contact with [Wilson's] family and loved ones."  Docket Item 7 at ¶ 67.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

## I.   PROCEDURAL DUE PROCESS CLAIM

Wilson alleges that the defendants violated his procedural due process rights when conducting his disciplinary hearing.  Docket Item 7 at ¶ 49.  To state a due process claim with respect to a prison disciplinary hearing, a prisoner-plaintiff "must allege that he possessed a protected liberty interest[] and was not afforded the requisite process before being deprived of that liberty interest."  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  "To determine the existence of a protected liberty interest, [courts] apply a two-part test."  *Id.*  First, the prisoner must show that "the confinement or restraint complained of create[d] an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,'" *id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); second, the prisoner must show that "the state ha[d] granted its [prisoners], by regulation or by statute, a protected liberty interest in remaining free from that

6

confinement or restraint,"[3] *id.* (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

To meet the liberty-interest criterion, a prisoner must demonstrate that the conditions under which he was held in SHU or other disciplinary confinement differed dramatically from the basic conditions of his incarceration.  *See Frazier*, 81 F.3d at 317; *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).  Courts look to "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and . . . the duration of the disciplinary segregation imposed compared to discretionary confinement."  *Wright*, 132 F.3d at 136.

The prisoner then must show that in imposing the confinement or restraint, the defendants denied the prisoner some aspect of the process he was due—that is, "[i] advance written notice of the charges; [ii] a fair and impartial hearing officer; [iii] a reasonable opportunity to call witnesses and present documentary evidence; and [iv] a written statement of the disposition, including supporting facts and reasons for the action taken."  *See Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted); *see also id.* at 488 (explaining that "the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board" (emphasis in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985))).

This Court previously found that "Wilson ha[d] adequately alleged a protected liberty interest" because "[t]he discipline imposed—90 days in the SHU . . . — reasonably could constitute an 'atypical and significant hardship . . . in relation to the

---

[3] "It is undisputed . . . that New York state law 'create[s] a liberty interest in not being confined to the SHU.'"  *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2004) (quoting *Welch v. Bartlett*, 196 F.3d 389, 394 n.4 (2d Cir. 1999)).

ordinary incidents of prison life.'"  Docket Item 8 at 9; *see also* Docket Item 6 at 9.  The Court explained that "[a]lthough the Second Circuit has found that 'SHU confinements of fewer than 101 days' generally can meet this threshold only 'if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical,' it also has 'explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights.'"  Docket Item 6 at 9 (quoting *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004)).  And "[b]ecause 90 days approache[d] the benchmark discussed in *Palmer*, and because this Court d[id] not yet have the benefit of a 'fully developed record' about the conditions of Wilson's confinement in the SHU, the Court [declined to] dismiss Wilson's serious allegations." *Id.*

In their motion to dismiss, the defendants state summarily that Wilson "failed to provide factual assertions that he had a legitimate liberty or property interest at stake." Docket Item 11-1.  In their reply, the defendants explain—as this Court recognized in its screening order—that "SHU confinement of 101 days or less does not *ordinarily* rise to the level of atypicality."  Docket Item 22 at 2 (emphasis added) (quoting *Read v. Calabrese*, 2013 WL 5506344 *4 (N.D.N.Y. August 29, 2013)).  But the defendants do not address this Court's finding that "[b]ecause 90 days approache[d] the benchmark discussed in [the Second Circuit's decision in] *Palmer*, and because this Court d[id] not yet have the benefit of a 'fully developed record' about the conditions of Wilson's confinement in the SHU," the claims should—at this early juncture—be allowed to

proceed, particularly in light of Wilson's status as a *pro se* litigant.[4]  As the First Circuit

has observed, "[i]t is not enough merely to mention a possible argument in the most

skeletal way, leaving the court to do counsel's work, create the ossature for the

argument, and put flesh on its bones."  *United States v. Zannino*, 895 F.2d 1, 17 (1st

Cir. 1990) (Selya, *J.*).  Based on the defendants' arguments, this Court sees no reason

to disturb its prior finding that Wilson has sufficiently alleged a liberty interest based on

his time in the SHU.

The defendants also argue that Wilson failed to state a claim for a violation of

procedural due process because he "was given adequate notice, a hearing, an

opportunity to present evidence, and an opportunity to appeal the decision."  Docket

Item 11-1 at 4.  More specifically, the defendants contend that "[o]n April 22, 2020,

Defendant Olles, who was neutral to the events that preceded, held a hearing against

[Wilson], on behalf of Defendant Wolcott.  Defendant Olles[] was empowered to issue a

positive or negative decision on [Wilson]'s case, depending on the evidence provided."

*Id.*

But on a motion to dismiss, this Court must accept all facts alleged by the plaintiff

as true and consider them in the light most favorable to the plaintiff.  And as this Court

---

[4] The defendants fault the Court for citing "*Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) [in its second screening order] for the proposition that '90 days in SHU . . . reasonably could constitute an atypical and significant hardship'" when "*Cruz* involves a SHU confinement of 18 months or 216 days."  Docket Item 22 at 2 (emphasis omitted).  But this Court did not rely on the facts of *Cruz*; the Court cited *Cruz* for the "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" legal standard and referred to the analysis in this Court's initial screening order, which relied on *Palmer*.  *See* Docket Item 8 at 9 (stating that "Wilson has adequately alleged a protected liberty interest[] for the reasons explained in this Court's prior order" (citing Docket Item 6 at 9)).

observed in its screening order, "Wilson alleges that Olles was not impartial and 'insisted on being the [f]act [f]inder just to find [Wilson] guilty' and 'cover for his co-workers.'"  Docket Item 8 at 10 (quoting Docket Item 1 at ¶¶ 20, 39).  Taking those allegations as true—as this Court must—Olles was not, as the government claims, "neutral to the events that preceded."  *See* Docket Item 11-1 at 4.  Thus, as this Court found in its screening order, *see* Docket Item 8 at 8-11, Wilson has adequately alleged a procedural due process violation.

The defendants rely on *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), in which the Second Circuit held that a prison guard's "filing of unfounded charges [against an inmate] did not give rise to a *per se* constitutional violation actionable under section 1983."  *Id.* at 953.  Rather, the court held, the relevant inquiry is whether "the disciplinary hearing [the plaintiff received] provided [him] with due process."  *Id.*  In *Freeman*, the court found that "the prison disciplinary hearing provided [the plaintiff] with the due process to which he was entitled."  *Id.* at 955.  But there—unlike this case—there was no allegation that the *decisionmaker* was biased.  Thus, *Freeman* is inapposite.

For all those reasons, this Court denies the defendants' motion to dismiss with respect to Wilson's procedural due process claim.

## II.    FALSE IMPRISONMENT CLAIM

Wilson also alleges that the defendants "[u]nlawfully [c]onfine[d]" him.  Docket Item 7 at 13.  As this Court explained in its screening order, "[b]ecause Wilson elsewhere alleges that the defendants violated his Fourth Amendment rights, the Court

liberally construes this claim as a claim for false imprisonment." Docket Item 8 at 11 (citing *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

"The tort of false arrest [or imprisonment] supports a claim . . . under section 1983 because it violates the Fourth Amendment." *See Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) (citing *Posr v. Doherty*, 944 F.2d 91, 97, 98 (2d Cir. 1991)). "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr*, 944 F.2d at 96 (citing *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473, 285 N.E.2d, 871, 877 (1972)); *see also Cook*, 41 F.3d at 80 (*"*[S]tate law is [the] authoritative source of [the] elements of [a] section 1983 cause of action." (citing *Wilson v. Garcia*, 471 U.S. 261, 277 (1985))).

To state a claim for false arrest or imprisonment under New York law, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Willey v. Kirkpatrick*, 801 F.3d 51, 70-71 (2d Cir. 2015) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456-57, 335 N.E.2d 310, 316 (1975)). "To succeed on the fourth element, a plaintiff complaining of false imprisonment within solitary confinement must have 'sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.'" *Id.* at 71 (quoting *Gittens v. State of N.Y.*, 132 Misc.2d 399, 403, 504 N.Y.S.2d 969, 972 (N.Y. Ct. Cl. 1986)).

As this Court explained previously, "[t]he complaint alleges that the defendants intended to confine Wilson, that Wilson was conscious of his confinement in the SHU, that he did not consent to it, and that it was not privileged because it was premised on

11

false testimony and violated due process."  Docket Item 8 at 12 (citing Docket Item 7 at ¶¶ 62-67).  Based on those allegations, this Court found that "Wilson has adequately alleged that the defendants falsely imprisoned him."  *Id.*

Citing no authority in support of their argument, the defendants contend that Wilson's false imprisonment claim should be dismissed because "[a]n inmate who is moved from one part of the facility to another[] has not incurred an injury through which remedy can be provided under false imprisonment."  Docket Item 11-1 at 5.  But as explained above, a false imprisonment claim can be based on unlawful punitive segregation in solitary confinement for an illegitimate reason and without due process—exactly what Wilson alleges here.  *See Willey*, 801 F.3d at 70-71 (finding that plaintiff had stated a claim "for false imprisonment within solitary confinement" because he "alleged . . . that the confinement was intentional, that he was conscious of it, that he did not consent to it, and that it was not privileged because it was done for an illegitimate reason and without due process").

The defendants next contend that their "actions were lawful pursuant to DOCCS Directive #4932 and #4933 and Title 7 NYCRR Chapters V and IV."  Docket Item 11-1 at 5-6.  More specifically, the defendants note that

> [a]ccording to DOCCS Directive #4933 and Title 7 NYCRR Chapter IV § 301.3 (a)(1): an inmate may be admitted to SHUs in the case of an inmate who is awaiting initial appearance before or determination of a disciplinary hearing or Superintendent's hearing.  Under § 302.1: Whenever an inmate is admitted to a SHU, a security supervisor will be present, and the inmate will undergo a strip-frisk, followed by a hand-held metal detector search, a portable metal detector and/or BOSS chair search in accordance with the provisions outlined in Department directives concerning "Control of and Search for Contraband."

But none of these provisions deals with Wilson's contention—which this Court found to be sufficient—that his confinement in the SHU "was not privileged because it was premised on false testimony and violated due process."  *See* Docket Item 8 at 12.  Once again, the defendants fail to accept the facts that Wilson alleges as true and view them in the light most favorable to Wilson.

## **ORDER**

        In light of the above, the defendants' motion to dismiss, Docket Item 11, is DENIED.


        SO ORDERED.

Dated:          August 10, 2022
                Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE